UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUAN GOMEZ,

    Petitioner,

v.

SCOTT FRAUENHEIM,

    Respondent.

Case No. 18-cv-03021-EMC

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Juan Gomez filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction and sentence from Santa Clara County Superior Court. Respondent has filed an answer to the petition, and Mr. Gomez has filed a traverse. For the reasons discussed below, the petition is denied.

## II. BACKGROUND

A.   The Crime

The California Court of Appeal described the evidence presented at trial:

> During a one-day trial, the victim, then 11 years old, testified that defendant is her younger half-sister's father. He moved in with her and her mother when the victim was six or seven years old. She testified that once, when she was sick and her mother was out buying soup, defendant asked if he could lick her vagina. She said yes and he did so, but he quickly stopped when her mother returned. Defendant told the victim not to tell her mother about the incident. On another occasion, when the victim was about eight years old, she laid down on the living room floor, pulled down her pants, and the defendant licked her vagina. He stopped when a friend of the victim's knocked on the door. Afterwards, he took the victim to ballet class. The victim recalled a third occasion when the defendant licked her vagina after she had gone swimming. The victim also testified that defendant once put his penis in her vagina; she told him "not all the way in 'cause it hurts." He then rubbed his

> penis on the outside of her vagina and white stuff came out of it. Defendant also showed the victim pornography on the television.
>
> On cross-examination, the victim said that she was angry with defendant when she first disclosed the abuse to a counselor. She also admitted to sometimes exaggerating and agreed with defense counsel's statement that "maybe not everything that you're saying happened [actually] happened."
>
> Alejandro Ortiz, a sexual assaults detective with the San Jose Police Department, testified that he interviewed defendant following his arrest. Detective Ortiz testified that defendant admitted to touching the victim's vagina with his finger and said that "he would tickle her [vagina] with his tongue." Defendant specifically admitted to touching the victim's vagina on a day when she was home sick, although he did not say what part of his body he used to touch her on that occasion. Defendant also admitted to exposing his penis to the victim and ejaculating "in front of her or near her." Defendant denied putting his penis inside the victim. On cross-examination, defense counsel asked: "[defendant] admitted that he orally copulated [the victim] one time; correct?" Detective Ortiz responded: "I believe so, yes."

*People v. Gomez,* No. H043446, 2017 WL 3769628, at *1 (Cal. Ct. App. Aug. 31, 2017) (alterations in original).

B.  Procedural History

Following a jury trial in Santa Clara County Superior Court, Mr. Gomez was convicted of one count of intercourse or sodomy with a child 10 years of age or younger (*see* Cal. Penal Code § 288.7(a)), and three counts of oral copulation or sexual penetration with a child 10 years of age or younger (*see* Cal. Penal Code § 288.7(b)). On April 1, 2016, Mr. Gomez was sentenced to 70 years to life in prison. *See* Docket No. 15-3 at 167-68. The sentence was comprised of a term of 25 years to life for the intercourse or sodomy with a child 10 years of age or younger (Count 1), plus three consecutive terms of 15 years to life for the three counts of oral copulation or sexual penetration with a child 10 years of age or younger (Counts 2, 3, and 4). *See id.* at 168.

Mr. Gomez appealed. The California Court of Appeal affirmed his conviction in a reasoned decision. *See Gomez*, 2017 WL 3769628, at *5. The California Supreme Court summarily denied Mr. Gomez's petition for review. Docket No. 15-15 at 2. He apparently did not file any petitions for writ of habeas corpus in the state courts.

Mr. Gomez then filed this action to obtain a federal writ of habeas corpus. His federal petition raises the lone claim that his trial attorney provided ineffective assistance of counsel by

2

incorrectly conceding Gomez's guilt on Counts 2, 3, and 4 during closing argument.

## III. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Santa Clara County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## IV. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state

3

court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The presumption that a later summary denial rests on the same reasoning as the earlier reasoned decision is a rebuttable presumption and can be overcome by strong evidence. *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-06 (2016).

## V.     DISCUSSION

### A.     Ineffective-Assistance-Of-Counsel Claim

Mr. Gomez contends that trial counsel provided ineffective assistance because, during her closing argument, she conceded that he was guilty of three counts of oral copulation. He contends that counsel misstated the evidence to his detriment because Detective Ortiz's testimony showed that Mr. Gomez admitted only one count of oral copulation.

#### 1.     Background

During closing argument, defense counsel argued:

> First of all, I want to say I know that you greatly dislike – and that's probably putting it mildly – Mr. Gomez. And that's okay because of the admissions that you heard that came from him and the conduct that he did. [¶] So the question is why are we here. Well, he is charged with four counts. *And he admitted to three. He admitted three counts.* He did not admit Count 1. And that was the sexual penetration. [¶] And why does it matter? It matters because he did not do Count 1.

RT 121-22 (emphasis added).

Later in the closing argument, defense counsel focused on the victim's confused testimony that suggested that Mr. Gomez placed his penis on the victim's vagina in three of the four incidents. Defense counsel argued:

> That did not happen. What happened was he touched her twice.

4

> Wrong. And he orally copulated her. Wrong. And he's guilty of that. [¶] So I – we are asking you to find him guilty of the counts for which he is, which are Counts 2, 3, and 4 and not Count 1. [¶] And we know that Leslie, at times, can exaggerate. But is the core of her testimony that something bad happened to her true? Yes. And we know that. The question is what happened? [¶] And so we are asking you – and you heard the admissions – to find him guilty of Counts 2, 3 and 4, but not of Count 1.

RT 123.

Mr. Gomez argued on appeal that counsel's erroneous statement that Mr. Gomez admitted the three acts charged in Counts 2, 3, and 4 was constitutionally ineffective assistance of counsel.

The California Court of Appeal first described the two-prong test (deficient performance and prejudice) for ineffective-assistance-of-counsel claims set out in *Strickland v. Washington*, 466 U.S. 668 (1984), and then applied that standard to reject Mr. Gomez's claim on the ground that there was no prejudice:

> We need not decide whether trial counsel's performance was deficient because defendant has not shown a reasonable probability of a more favorable verdict had trial counsel not conceded guilt on the oral copulation counts.
>
> The defense did not call any witnesses or offer any evidence. Thus, the only viable defense strategy was to challenge the victim's credibility. The guilty verdict on count 4, charging sexual intercourse, demonstrates the jury credited the victim's testimony despite defendant's denial of that charge, as testified to by Detective Ortiz. Logic dictates that the jury likewise would have credited the victim's testimony as to the oral copulations had defense counsel not stated that defendant admitted those charges. We do not find persuasive defendant's theory that jurors voted to convict him, not because they were persuaded by the victim's testimony, but because they believed defense counsel had attempted to mislead them into believing defendant admitted to more counts than he did.
>
> For the foregoing reasons, defendant's ineffective assistance of counsel claim fails.

*Gomez*, 2017 WL 3769628, at *3.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr. Gomez is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

5

2. <u>Analysis of Federal Constitutional Claim</u>

The Sixth Amendment's right to counsel guarantees not only assistance, but effective assistance, of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* In order to prevail on a Sixth Amendment ineffective-assistance-of-counsel claim, a petitioner must establish two things. First, he must demonstrate that counsel's performance was deficient and fell below an "objective standard of reasonableness" under prevailing professional norms. *Id* at 687-88. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

A "doubly" deferential judicial review is appropriate in analyzing ineffective-assistance-of-counsel claims under § 2254. *See Cullen v. Pinholster*, 563 U.S. 170, 202 (2011). The "question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The California Court of Appeal's rejection of Mr. Gomez's claim was not contrary to, or an unreasonable application of, clearly established federal law. The state appellate court correctly identified the *Strickland* test as the test applicable to the ineffective-assistance claim and reasonably applied it to determine that no prejudice was shown from counsel's erroneous concession of guilt on three counts.

Perhaps the biggest hurdle for the prosecution in a child-molestation case is to convince the jury that the events happened at all, i.e., to convince the jury that the child did not fabricate the

accusations and that the defendant is the sort of person who would sexually abuse a child. That hurdle was overcome in this case because Mr. Gomez's statement to the police detective confirmed many of the victim's statements and showed that he was the sort of person who would sexually abuse a child. Mr. Gomez admitted to the detective that he had licked the victim's vagina once (RT 97, 100), that he had touched the victim's vagina with his finger for sexual gratification (RT 96), that he had exposed himself to the victim (RT 98), and that he had ejaculated close to the victim's vagina (RT 98). (The interview had been transcribed and the detective had that transcript available at trial, RT 88, thus reducing any ability to argue the detective's memory was faulty.)

Even though Mr. Gomez had admitted to the police only one incident of oral copulation (RT 97, 100), it was not unreasonable for the California Court of Appeal to conclude that defense counsel's mistaken statement that Mr. Gomez had admitted all three incidents of oral copulation did not result in any prejudice to Mr. Gomez. The evidence against Mr. Gomez was strong, with the victim identifying three separate incidents of oral copulation: Mr. Gomez had licked her vagina on one occasion when she was home sick (RT 57-60, 84), on another occasion before her friend came to the door (RT 61-62, 85), and on a third occasion after she and Mr. Gomez had been at a swimming pool (RT 66-68, 85). It was not necessary for the jury to have corroboration in the form of an admission from Mr. Gomez for each of the events to find him guilty of all three acts. Contrary to Mr. Gomez's argument, the victim's credibility was not greatly undermined. Although the victim said on cross-examination that she sometimes did not tell the truth, she was rehabilitated on redirect examination when she confirmed that these three specific incidents had, in fact, occurred (RT 84-85). The 11-year-old victim's credibility was enhanced by the unusual fact that she tried to take responsibility for the events by stating that she had asked Mr. Gomez to perform the sex acts on her (RT 63-64, 73). Overall, the victim's credibility was not eviscerated and instead was only slightly tarnished by her acknowledgement that she sometimes exaggerated things. The trial had only two witnesses (i.e., the victim and the detective); the victim's testimony about Mr. Gomez's sexual activity was at least partially corroborated by Mr. Gomez's statements to the detective; and the jury found Mr. Gomez guilty of Count 1 (intercourse with a child 10 years or age or under), even though Mr. Gomez had denied engaging in intercourse with the victim.

7

Given these facts, it was not unreasonable for the California Court of Appeal to conclude that there was not a "reasonable probability that," but for counsel's erroneous statement that Mr. Gomez admitted guilt on Counts 2, 3, and 4 (i.e., the three counts of oral copulation), "the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694.

The court may look to the jury's conduct along with counsel's deficient performance in determining whether there was a reasonable probability of a different outcome. *Cf. Jennings v. Woodford*, 290 F.3d 1006, 1019 (9th Cir. 2002) (*Strickland* prejudice prong satisfied because, given the "overwhelming evidence" that defendant was the killer, the fact that jury deliberated for two days before finding defendant guilty of first-degree murder supported conclusion that jury would have found reasonable doubt on mental state if defense counsel had investigated and presented evidence about defendant's mental health problems and drug abuse). Here, the length of the jury deliberations does not carry much weight in favor of, or against, a finding of prejudice because both the trial and deliberations were short. From start to finish, the trial took less than a day and the deliberations took less than two hours. *See* CT 147-49 (opening statements started at 9:22 a.m.; deliberations began at about 2:55 p.m.; verdict reached at 4:23 p.m.). The short deliberations show at least that the jury did not struggle with the case.

Mr. Gomez argues that the Supreme Court's recent decision in *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), supports his claim. In *McCoy*, the Supreme Court held that a defendant has a Sixth Amendment right to insist that counsel refrain from admitting the defendant's guilt "even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. . . . [I]t is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt." 138 S. Ct. at 1505. When, contrary to the defendant's express wish to maintain his innocence, counsel has admitted the defendant's guilt, the *Strickland* two-prong test does not apply; the error is structural and reversal is required without any need to show actual prejudice. *Id.* at 1510-11.

Even assuming that Mr. Gomez directed trial counsel not to concede guilt, *McCoy* does not help Mr. Gomez because *McCoy* had not yet been decided when the California Court of Appeal

considered Mr. Gomez's claim.[1]  "[Section] 2254(d)(1) requires federal courts to 'focu[s] on what a state court knew and did,' and to measure state-court decisions 'against this Court's precedents *as of 'the time the state court renders its decision.*'"  *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (second alteration in original).  It cannot be said that the California Court of Appeal's decision was contrary to, or involved an unreasonable application of, the *McCoy* holding that did not yet exist.  *Id.*; *see Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (when Supreme Court "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'  Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized.") (last two alteration sin original) (citation omitted).  *Cf. Barbee v. Davis*, 728 F. App'x 259, 267 n.6 (5th Cir. 2018) (pre-*McCoy* case declining to wait for Supreme Court decision in *McCoy* because the Supreme Court's anticipated decision in *McCoy* "is not likely to shed light" as to whether the state habeas court's resolution of the ineffective-assistance claim was unreasonable in light of clearly established law at the time the state habeas court decided the case).  At the time Mr. Gomez's case was decided by the California Court of Appeal, the law was that the *Strickland* two-prong test applied to a claim that counsel had conceded guilt without the assent of the client.  *See Florida v. Nixon*, 543 U.S. 175, 178 (2004) (defense counsel's failure to obtain defendant's express consent to a strategy of conceding guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient); *id.* at 179 (state court erred in applying a presumption of deficient performance and a presumption of prejudice to counsel's concession of guilt).  Thus, it was consistent with Supreme Court precedent then in place for the California Court of Appeal to consider whether *Strickland*'s prejudice prong was satisfied rather than to treat counsel's concession of guilt as a structural error requiring automatic reversal.

The California Court of Appeal's rejection of Mr. Gomez's ineffective-assistance-of-counsel claim was not contrary to, or an unreasonable application of, clearly established federal

---

[1] The opinion in *McCoy* was issued on May 14, 2018.  The California Court of Appeal rejected Mr. Gomez's appeal on August 31, 2017, and the California Supreme Court denied review on November 15, 2017.

9

law as set forth by the U.S. Supreme Court. He therefore is not entitled to the writ.

B. <u>No Certificate of Appealability</u>

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is **DENIED**.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED** on the merits.

Petitioner's motion for appointment of counsel, filed five months after his traverse was filed, is **DENIED**. Docket No. 21. There is no reason to appoint counsel in this case that is being closed today.

The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: December 18, 2019

_____
EDWARD M. CHEN
United States District Judge